UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
SAM J. IANNOLO,                     :    10 Civ. 7602 (JPO)(JCF)
                                    :
              Plaintiff,            :        REPORT and
                                    :        RECOMMENDATION
    - against -                     :
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of Social Security,    :
                                    :
              Defendant.            :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE J. PAUL OETKEN, U.S.D.J.:

    The plaintiff, Sam J. Iannolo, brings this action pursuant to
section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. §
405(g), seeking review of a determination of the Commissioner of
Social Security (the "Commissioner") finding that he is not
entitled to disability insurance benefits.  The parties have
submitted cross-motions for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure.

Background

    A.   Personal History

    Mr. Iannolo was born on December 15, 1960.  (R. at 117, 149)[1].
He attended school through the 11th grade.  (R. at 157).  From 1980
until April 2006, he was employed as an automobile painter and auto
repairman.  (R. at 153).  His job responsibilities required him to

_____

    [1] "R." refers to the Administrative Record.

1

stand or walk most of the time, and to stoop, kneel, or crouch for at least one hour of each eight-hour workday.  (R. at 154).  He spent at least one-third of every workday lifting and carrying tools, painting equipment, and automobile parts weighing approximately twenty-five pounds, and, on occasion, he was required to lift objects weighing over one hundred pounds.  (R. at 154).  As the result of an automobile accident, Mr. Iannolo began experiencing back problems in 1994.  (R. at 282, 287).  The plaintiff alleges that in April 2006, his back pain became so severe that he stopped working and has not worked since.  (R. at 26-27, 32).

   B.   Medical History

   Between 2004 and 2005, Dr. Adam Nogrady, a chiropractor, treated Mr. Iannolo for complaints of back and neck pain on eight occasions.  (R. at 282-84).  X-rays of the plaintiff's cervical[2] spine taken on October 26, 2004 showed slight scoliosis[3] and slight degenerative changes at spinal cord levels C5 and C6 due to chronic biomechanical changes at those levels.  (R. at 281).  There is no record of treatment for 2006.  (R. at 281-287).  Dr. Nogrady treated the plaintiff nine times in December 2007, and twice in

---

   [2]  Cervical means "pertaining to the neck."  Dorland's Illustrated Medical Dictionary ("Dorland's") 339 (31st ed. 2007).

   [3]  Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine."  Dorland's at 1706.

2

January 2008.  (R. at 284-85).  The treatment note from January 16, 2008 appears to indicate that Mr. Iannolo "ha[d] gone back to work again."  (R. at 285).

On April 3, 2008, Mr. Iannolo had a magnetic resonance imaging scan ("MRI") of his lumbosacral[4] spine.  (R. at 245).  The scan showed moderate to severe degenerative changes at L4-L5 and L5-S1, and a disc herniation on the left at L4-L5 with moderate impingement upon the exiting left L4 nerve root.  (R. at 245-46).

On April 18, 2008, Mr. Iannolo was examined by Dr. Steven Jacobs, a neurosurgeon, concerning complaints of low back pain radiating down his left leg.  (R. at 243-44).  Mr. Iannolo reported that he "[s]lid out from a under a trailer in [November 2007] and has had progressive pain ever since."  (R. at 243).  The plaintiff told Dr. Jacobs that his pain was "severe," "occur[red] constantly," and had "affected [his] work attendance"; he said that he was "unable to bend, carry, climb, crouch, lift, pull, push, turn and twist."  (R. at 243).  Mr. Iannolo's current medications were Vicodin and Soma.  (R. at 243).  Dr. Jacobs' examination of Mr. Iannolo revealed that his neck was normal.  (R. at 243).  Dr. Jacobs reported that the plaintiff's motor strength was full for all joints of his upper and lower extremities except for the

---

[4] Lumbosacral means "pertaining to the loins and sacrum." Dorland's at 1092.

dorsiflexor muscle in his left foot, in which he tested at 4/5 of normal strength. (R. at 244). Mr. Iannolo's sensation to light touch was decreased on the left at L5 and S1, and his sensation to pinprick was decreased on the left at L5 and S1. (R. at 244). Dr. Jacobs reported that Mr. Iannolo's gait and station were normal. (R. at 244). Dr. Jacob's assessment was "Neuritis[5] [o]r Radiculitis[6] Thoracic[7] [o]r Lumbosacral Unspec[ified]." (R. at 244). Because Mr. Iannolo had "not improved with conservative measures," he was "scheduled for decompression and fusion [surgery] at L45 and L5, S1." (R. at 244).

Dr. Jacobs examined Mr. Iannolo again on June 3, 2008, two days prior to his scheduled surgery. (R. at 234-35). Mr. Iannolo's sensation to light touch and his sensation to pinprick had further decreased on the left at L4 and L5, but all of Dr. Jacobs' other findings and impressions remained unchanged. (R. at 234).

---

[5] Neuritis is "inflammation of a nerve, pain and tenderness, anesthesia and paresthesias, paralysis, wasting, and disappearance of the reflexes." Dorland's at 1282.

[6] Radiculitis is "inflammation of the root of a spinal nerve, especially of that portion of the root which lies between the spinal cord and the intervertebral canal." Dorland's at 1595.

[7] Thoracic means "pertaining to or affecting the thorax (chest)." Dorland's at 1945.

4

On June 5, 2008, Mr. Iannolo underwent a lumbar laminectomy[8] at L4, L5 and bilateral fusion at L4-L5 and L5-S1.  (R. at 209-11). He was diagnosed with degenerative disc disease at L4-5 and L5-S1, and spinal stenosis[9] at L4-5.  (R. at 209).

Mr. Iannolo was examined by Dr. Jacobs again on June 23, 2008, who reported that the plaintiff was "doing well and delighted" with the results of his operation.  (R. at 226).  Mr. Iannolo told Dr. Jacobs that his strength was better, his numbness was lessened, and his pain was ninety-percent improved.  (R. at 226).  Dr. Jacobs rated Mr. Iannolo's motor strength at 5/5 in his lower extremities, and noted that his sensation was intact and that his gait and station were normal.  (R. at 226).

In a report submitted to the New York State Office of Temporary and Disability Assistance on June 25, 2008, Mr. Iannolo wrote that his daily activities consisted of reading the newspaper, watching television, resting, and sitting outside when the weather permitted.  (R. at 162).  Mr. Iannolo stated that he did not socialize often, and was no longer able to engage in any of his

---

[8] A laminectomy is the "excision of the posterior arch of a vertebra."  Dorland's at 1017.

[9] Spinal stenosis is a "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space."  Dorland's at 1795. The "condition may be either congenital or due to spinal degeneration."  Id.

hobbies or favorite activities, but was visited by his family two or three times a week.  (R. at 165-66).  Mr. Iannolo reported that muscle spasms prevented him from sleeping well.  (R. at 162).  He stated that he wore a prescribed "brace/splint," used a cane when walking, and could walk only one-half block before needing to stop and rest.  (R. at 167).  Mr. Iannolo wrote that he now drove infrequently, and did so with the aid of a therapeutic massage pad. (R. at 164).  Mr. Iannolo stated that he experienced constant pain, for which he took the medication Percoset, but complained that it caused the side effects of nausea, dizziness, lightheadedness, and fatigue.  (R. at 170).

On September 3, 2008, Mr. Iannolo was examined by Dr. Steven Rocker, an internist who conducted a consultative medical examination at the Commissioner's request.  (R. at 256-59).  Mr. Iannolo rated his current back pain as an 8 on a scale of 10.  (R. at 256).  The plaintiff reported that, since the surgery, he no longer experienced radiation of pain to his lower left extremity. (R. at 256).  Though he had taken oxycodone for pain in the past, Mr. Iannolo was currently taking only over-the-counter medicine, which did not provide significant relief.  (R. at 256).   Mr. Iannolo had not received physical therapy recently.  (R. at 256). Mr. Iannolo reported that he spent his days watching television, listening to radio, and reading, and was independent in his

activities of daily living.  (R. at 256).  Dr. Rocker noted that the plaintiff was wearing a plastic low back support and walked with a cane prescribed by Dr. Jacobs.  (R. at 257).  Dr. Rocker reported that Mr. Iannolo walked with a slight limp with or without the cane, which he believed was "not essential for normal ambulation." (R. at 257).  Mr. Iannolo did not require assistance changing clothes for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  (R. at 257).  Dr. Rocker reported that Mr. Iannolo had difficulty sitting up from a lying position, however.  (R. at 258).  Mr. Iannolo's cervical spine "show[ed] full flexion,[10] extension, lateral flexion bilaterally, and full rotary movement bilaterally." (R. at 258). Mr. Iannolo's lumbosacral spine was "limited to 40 degrees forward flexion, [and] 30 degrees right and left lateral flexion, and full right and left rotation." (R. at 258).  The plaintiff's straight leg raising in sitting and lying position elicited low back pain at 40 degrees bilaterally.  (R. at 258).  Mr. Iannolo had full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles.  (R. at 258).  His muscle strength in his upper and lower extremities was rated at 5/5.  (R. at 258).  Mr. Iannolo's

---

[10] Flexion is "the act of bending or condition of being bent." Dorland's at 725.

deep tendon reflexes were physiologic[11] and equal in upper and lower
extremities, and no motor or sensory deficit was noted.  (R. at
258).  Dr. Rocker's diagnosis was "low back pain, status post low
back surgery," and determined that Mr. Iannolo had no limitation
for hearing, speaking, or handling; mild limitation for sitting;
mild-to-moderate limitation for standing or walking, and;
moderate-to-marked limitation for lifting and carrying.  (R. at
258).

    On January 9, 2009, an MRI of Mr. Iannolo's cervical spine
revealed a disc herniation at the right neural foraminal[12] C3-C4
level resulting in severe impingement of the right C4 nerve root.
(R. at 268).  An MRI of Mr. Iannolo's lumbar spine performed the
same day revealed an L4-5 disc herniation at the left neural
foraminal level resulting in impingement of the left L4 nerve root.
(R. at 269).

    On December 1, 2009, Dr. Jacobs examined Mr. Iannolo and
assessed his ability to perform work-related activities.  (R. at
276-78).  Dr. Jacobs opined that Mr. Iannolo could occasionally
lift or carry less than ten pounds for up to 1/3 of an eight-hour

---

    [11] Physiologic means "characteristic of or conforming to the
normal functioning or state of the body or a tissue or organ."
Dorland's at 1464.

    [12] Foraminal is the adjective form of foramen, which refers to
"a natural opening or passage . . . especially one into or through
a bone."  Dorland's at 737.

workday.  (R. at 276).  He opined that the plaintiff could stand or walk less than two hours and sit for about six hours in an eight-hour workday.  (R. at 277).  Dr. Jacobs noted that Mr. Iannolo was limited in pushing or pulling in his lower extremities, and concluded that he was unable to do manual labor that involves lifting, bending, or stooping.  (R. at 277-78).

C.  Procedural History

On May 21, 2008, Mr. Iannolo filed an application for disability insurance benefits, alleging that he has been disabled since April 1, 2006.  (R. at 115-20).  The application was denied (R. at 52-63), and the plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. at 65).  On December 2, 2009, Mr. Iannolo appeared with counsel at a hearing before ALJ Dennis Katz.  (R. at 23-43).

At the hearing, ALJ Katz elicited additional testimony about Mr. Iannolo's medical conditions.  (R. at 25-43).  The plaintiff testified that he was able to sit for only twenty to thirty minutes before needing to stand up, and that he was only able to sit for two hours in an eight-hour workday.  (R. at 36, 42).  Mr. Iannolo explained that he had been examined by Dr. Jacobs the day before the hearing but had not seen him regularly because he was no longer able to afford health benefits.  (R. at 35-36).  When the ALJ asked whether Dr. Jacobs had "manipulate[d]" him during the previous

9

day's examination, Mr. Iannolo said no, but related that the doctor had performed "a couple of exams," including "checking pressure on [his] toes." (R. at 36). Mr. Iannolo stated that he was unable to take any pain medication because it gave him a stomach ulcer, and that he was only taking medication for his "acid reflux and [his] stomach problem." (R. at 41).

Mr. Iannolo testified that, in 1995, he had formed a corporation for "doing custom cars and custom motorcycles." (R. at 27). The plaintiff stated that he had worked until April 2006, when "it finally got to the point where the back pain was so bad [he] was unable to do [his] job." (R. at 26). The ALJ pointed out that, according to Social Security Administration ("SSA") records, Mr. Iannolo earned $12,388 in 2006, and $11,323 in 2007 -- after the alleged onset of his disability -- as self-employment income associated with his corporation. (R. at 28-29). Mr. Iannolo explained that the earnings were erroneously reported due to an accounting mistake, and that the income actually belonged to his wife's cleaning company. (R. at 29). The plaintiff stated that he could provide proof of payments to his wife's company for 2006 and 2007. (R at 31-32). The copies of checks later submitted by Mr. Iannolo, however, were all dated in the first week of 2009; he provided no documents concerning payments for 2006 or 2007. (R. at 288-91).

10

In a March 16, 2010 decision, the ALJ concluded that Mr. Iannolo could perform a full range of sedentary work[13] and thus did not suffer from a disability as defined by the Social Security Act. (R. at 10, 16).  In a letter to the Appeals Council, Mr. Iannolo's counsel maintained that the reporting of wages for the plaintiff in 2006-07 was an accounting error but that Mr. Iannolo was prepared to amend the date of onset of disability to January 1, 2008 for purposes of his appeal.  (R. at 182).  ALJ Katz' decision became the final decision of the Commissioner on August 27, 2010, when the Appeals Council denied Mr. Iannolo's request for review.  (R. at 1-3).  The plaintiff then filed the instant complaint on October 5, 2010.

Analytical Framework

    A.   Determination of Disability

A claimant is disabled under the Act and therefore entitled to

---

[13] Title 20, Section 404.1567(a) of the Code of Federal Regulations defines sedentary work as work that:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

disability benefits if he can demonstrate that he is unable to
"engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than twelve months."
42 U.S.C. § 423(d)(1)(A); see also Hahn v. Astrue, No. 08 Civ.
4261, 2009 WL 1490775, at *6 (S.D.N.Y. May 27, 2009); Marrero v.
Apfel, 87 F. Supp. 2d 340, 345-46 (S.D.N.Y. 2000).  The disability
must be of "such severity that [the claimant] is not only unable to
do his previous work but cannot, considering his age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy."  42 U.S.C. §
423(d)(2)(A).

To determine whether a claimant is entitled to disability
benefits, the Commissioner employs a five-step sequential analysis.
20 C.F.R. § 404.1520.  First, the claimant must demonstrate that he
is not currently engaging in substantial gainful activity.  20
C.F.R. § 404.1520(a)(4)(i) & (b).  Next, the claimant must prove
that he has a severe impairment that "significantly limits [his]
physical or mental ability to do basic work activities."  20 C.F.R.
§ 404.1520(a)(4)(ii) & (c).  Third, if the impairment is listed in
20 C.F.R. § 404, Subpt. P, App. 1 or is the substantial equivalent
of a listed impairment, the claimant is automatically considered

12

disabled.  20 C.F.R. § 404.1520(a)(4)(iii) & (d).  If, however, the claimant's impairment is neither listed nor equal to any listed impairment, he must prove that he does not have the residual functional capacity to perform his past work.   20 C.F.R. § 404.1520(a)(4)(iv) & (e); <u>Longbardi v. Astrue</u>, No. 07 Civ. 5952, 2009 WL 50140, at *23 (S.D.N.Y. Jan. 7, 2009) (citing <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999), and <u>Bapp v. Bowen</u>, 802 F.2d 601, 604 (2d Cir. 1986)).  Finally, if the claimant satisfies his burden of proof on the first four steps, the burden shifts to the Commissioner to demonstrate that there is alternative substantial gainful employment in the national economy that the claimant can perform.   20 C.F.R. § 404.1520(a)(4)(v) & (g); <u>Longbardi</u>, 2009 WL 50140, at *21 (citing <u>Rosa</u>, 168 F.3d at 77, and <u>Bapp</u>, 802 F.2d at 604).  In order to determine whether the claimant can perform other substantial, gainful employment, the Commissioner must consider objective medical facts, diagnosis or medical opinions based on these facts, subjective evidence of pain or disability, and the claimant's educational background, age, and work experience.  <u>Hahn</u>, 2009 WL 1490775, at *7; <u>see also</u> <u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam).

    B.  <u>Judicial Review</u>

    The Social Security Act provides that the Commissioner's findings as to any fact, if supported by substantial evidence,

shall be conclusive.  42 U.S.C. § 405(g).  A court reviewing the Commissioner's decision "may set aside a decision of the Commissioner if it is based on legal error or if it is not supported by substantial evidence."  Hahn, 2009 WL 1490775, at *6 (quoted source omitted); see Longbardi, 2009 WL 50140, at *21; Bonet v. Astrue, No. 05 Civ. 2970, 2008 WL 4058705, at *2 (S.D.N.Y. Aug. 22, 2008).  Judicial review, therefore, involves two levels of inquiry.  First, the court must decide whether the Commissioner applied the correct legal standard.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254, 2008 WL 4452359, at *8 (S.D.N.Y. April 29, 2008).  Second, the court must decide whether the ALJ's decision was supported by substantial evidence.  Rosa, 168 F.3d at 77; Longbardi, 2009 WL 50140, at *21. "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi, 2009 WL 50140, at *21; see also Brown, 174 F.3d at 62. Substantial evidence in this context is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hahn, 2009 WL 1490775, at *6 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir.

14

2004) (quoting <u>Richardson</u>, 402 U.S. at 401).  If substantial evidence supports the Commissioner's decision, then it must be upheld, even if substantial evidence also supports the contrary result.  <u>Ventura v. Barnhart</u>, No. 04 Civ. 9018, 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Alston v. Sullivan</u>, 904 F.2d 122, 126 (2d Cir. 1990)) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").

C.  <u>ALJ's Decision</u>

Here, the ALJ determined at step one of the disability inquiry that Mr. Iannolo was ineligible for benefits because he had engaged in substantial gainful activity in 2006 and 2007, based on the unrebutted evidence of self-employment income reported on his earnings records for those years.[14]  (R. at 14-15).  At step two, the ALJ found that Mr. Iannolo's discogenic[15] disease of the cervical and lumbar spine and status-post L4-S1 fusion/laminectomy were "severe" impairments.  (R. at 15).  At step three, ALJ Katz concluded that none of Mr. Iannolo's impairments nor any

---

[14] On appeal to the Appeals Council, as well as for purposes of this action, Mr. Iannolo amended the alleged onset of disability to January 1, 2008.  (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Memo.") at 1). Therefore, Mr. Iannolo's disability during 2006 and 2007 is not at issue here.

[15] Discogenic means "caused by derangement of an intervertebral disk."  <u>Dorland's</u> at 534.

15

combination of them met or medically equaled any listed impairment. (R. at 15).  At the fourth step, the ALJ determined that the plaintiff had the residual functional capacity to perform sedentary work, requiring maximum lifting of ten pounds and the ability to sit for eight hours and stand and/or walk for a total of six hours. (R. at 16).  Because the ALJ found that Mr. Iannolo was unable to engage in his past relevant work, he proceeded to step five.  (R. at 17-18).  After considering Mr. Iannolo's specific vocational profile -- including his residual functional capacity, age of forty-five years as of the alleged onset date, limited (eleventh-grade) education, and work experience -- ALJ Katz held that the plaintiff was not disabled.  (R. at 18; see 20 C.F.R. § 404, Subpt. P, App. 2, Rule 201.19).

Discussion

    A.   Residual Functional Capacity

The substantive dispute in this case centers on step four of the sequential analysis: whether Mr. Iannolo had the residual functional capacity to perform a full range of sedentary work. Residual functional capacity is "the most [a claimant] can still do" after considering the limitations that affect the claimant's ability to do work-related physical and mental activities.  20 C.F.R. § 404.1545(a)(1).  In determining a claimant's residual functional capacity, the ALJ must consider the totality of the

record giving weight to every medical opinion, regardless of its source.  20 C.F.R. § 404.1527.

Here, it is beyond dispute that Mr. Iannolo suffers from significant spinal conditions.  Notwithstanding his impairment, the medical evidence of record and Mr. Iannolo's sporadic medical treatment for his physical conditions during the relevant period provides substantial evidence of a residual functional capacity sufficient to allow sedentary work.  Mr. Iannolo underwent surgery in June 2008.  At his follow-up examination a few weeks later, Mr. Iannolo reported that his pain was 90 percent improved; Dr. Jacobs rated Mr. Iannolo's motor strength in his lower extremities at 5/5, and noted that his sensation was intact and that his gait and station were normal.  Three months after the surgery, Dr. Rocker conducted a full examination of the plaintiff and found that, despite his limitations for lifting, carrying, standing, and walking, he engaged in the activities of daily living independently and that his condition was consistent with sedentary work capacity. Mr. Iannolo did not seek treatment again until January 2009, when the MRIs of his cervical and lumbar spine were taken, and then not again for almost a full year, until he saw Dr. Jacobs for purposes of obtaining an assessment for his administrative hearing.  As highlighted by the ALJ, Mr. Iannolo had not been hospitalized or required any emergency room visits, and "did not take any

17

significant prescription or over-the-counter medications for pain
-- a factor inconsistent with the [Mr. Iannolo's] allegations of
debilitation." (R. at 16-17). Although the MRIs revealed that Mr.
Iannolo suffers from serious and undoubtedly painful spinal
disorders, the otherwise complete absence of treatment for six
months before and eleven months after the scans provided sufficient
support for the ALJ's conclusion that Mr. Iannolo remained capable
of sedentary work activity.

   B.  <u>Credibility</u>

   In addition, there is substantial evidence to support the
ALJ's determination that Mr. Iannolo's assertions concerning his
symptoms and treatment history were not entirely credible.   In
determining whether a claimant is disabled, the SSA must consider
all of the claimant's symptoms and the extent to which the symptoms
can reasonably be accepted as consistent with the objective medical
evidence and other evidence.[16]  20 C.F.R. §404.1529(a).  Objective
medical evidence is a "useful indicator" of a claimant's symptoms,
but a claimant's statements about the effect of their symptoms may
not be rejected solely because they are not substantiated by

---

   [16] "Symptoms" are the claimant's own description of their
physical or mental impairments.   20 C.F.R. § 404.1528(a).
"Objective medical evidence" means medical signs and laboratory
findings as defined in 20 C.F.R. § 404.1528(b) and (c).  20 C.F.R.
§ 404.1512(b)(1).   "Other medical evidence" is defined in §§
404.1512(b)(2)-(b)(6) and 404.1513(b) and (d).

objective medical evidence.  20 C.F.R. § 404.1529(c)(2).  Daily activities also constitute a relevant factor when considering the severity of an impairment.  20 C.F.R. § 416.929(c)(3)(i).

"If the claimant's statements about [his] symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility." Murphy v. Barnhart, No. 00 Civ. 9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan 21, 2003).  "In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." Id.  (citing Rivera v. Apfel, No. 94 Civ. 5222, 1999 WL 138920, at *8 (S.D.N.Y. March 15, 1999)); see also Lugo v. Apfel, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998).  In determining the extent to which symptoms affect the claimant's capacity to perform basic work activities, the ALJ must also consider any "inconsistencies in the evidence and . . . any conflicts between [the claimant's] statements and the rest of the evidence."  20 C.F.R. § 404.1529(c)(4).

If an ALJ finds that a claimant is not credible, he must set forth the reasons for that finding "with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1998) (citing Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 643 (2d Cir. 1983)); see also Osorio v. Barnhart, No. 04 Civ. 7515,

2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006) (finding that a credibility determination will "be set aside if it is not set forth 'with sufficient specificity to enable [a reviewing court] to decide whether [it] is supported by substantial evidence.'"). A reviewing court must defer to an ALJ's finding regarding a claimant's credibility when it is supported by substantial evidence. Id. (quoting Aponte v. Secretary of Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1984)).

Here, the ALJ found that Mr. Iannolo's reports of self-employment income after the alleged onset of his disability suggested he had "been less than candid in his assertion that he was 'not able' to work during calendar years 2006 and 2007 -- a factor that undermines his overall reliability as a witness." (R. at 15). The ALJ found that the plaintiff's credibility was further undermined by the fact that he told Dr. Jacobs in April 2008 that he was experiencing progressive back pain since he "slid out from under a trailer" in November 2007, despite maintaining that he had been unable to work since April 2006. (R. at 16, 243). Moreover, Dr. Nogrady's treatment note from Mr. Iannolo's visit of January 16, 2008 -- after the amended alleged date of onset -- appears to indicate that Mr. Iannolo "ha[d] gone back to work again." (R. at 285).

Mr. Iannolo explains that his medical treatment has been

20

sporadic "because he had neither funds nor medical insurance to pay
for [it]." (Pl. Memo., at 7). This is contradicted by letters he
wrote in April 2009 in which he stated that his health care
coverage would expire in June 2009, a full year after his surgery,
during which his only treatment was the January MRIs. (R. at 75,
76, 136, 137). Additionally, Mr. Iannolo argues that the ALJ's
determination that his "medical conditions have not necessitated
. . . pain medication" is inaccurate; he alleges that he is unable
to take pain medication due to a stomach ulcer. (Pl. Memo., at 7).
However, the April 2009 letters also reveal that Mr. Iannolo
complained he was no longer able to afford the medication he
needed, belying his alleged intolerance of pain medication. (R. at
75, 76, 136, 137).

The ALJ also found Mr. Iannolo's medication-related claims to
be unsupported by his medical records. (R. at 41). During his
visits to Dr. Jacobs on April 18, June 3, and June 23, 2008, Mr.
Iannolo reported that he had no history of gastrointestinal
disorders and did not complain of any gastrointestinal symptoms or
of any side effects from his medication. (R. at 243, 234, 226).
In September 2008, Mr. Iannolo told Dr. Rocker that he had taken
oxycodone for his pain in the past and was taking over-the-counter
analgesics for his back pain at that time; he did not report any
side effects or gastrointestinal distress from these medications.

(R. at 13, 256).  In one report submitted to the SSA, Mr. Iannolo indicated that he was taking Percoset with no side effects; just weeks later, Mr. Iannolo submitted another SSA report in which he wrote that Percoset caused him nausea, dizziness, light-headedness, and fatigue -- only two days after he reported having no stomach problems or side effects to Dr. Jacobs.  (R. at 156, 170).  Not until his administrative hearing in December 2009 did Mr. Iannolo complain that pain medication gave him a stomach ulcer, a claim for which there is no corroborative evidence.  Given the inconsistencies between Mr. Iannolo's testimony and the medical evidence of record, it was reasonable for the ALJ to conclude that his statements concerning his symptoms and treatment history were not entirely credible.  (R. at 17).

    C.   Treating Physician Rule

    The SSA regulations establish that a treating physician's opinion regarding the nature and severity of a plaintiff's impairment(s) "will be given 'controlling weight' if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the record]." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) (quoting 20 C.F.R. § 416.927(d)(2)); Longbardi, 2009 WL

50140, at *24 (citing <u>Green-Younger</u>, 335 F.3d at 106). "When other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." <u>See</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)). Moreover, factual and inferential findings (including the ultimate finding of disability), credibility findings, and inferences drawn from the conflicting medical evidence, are "reserved to the Commissioner." <u>See</u> <u>id.</u> (internal quotations omitted).

In cases in which the Commissioner determines that a medical source opinion is not controlling, the regulations nevertheless require the ALJ to consider various factors to determine what weight the opinion will be given. <u>See</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). These factors include the length of the treatment relationship, the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physician, and any other factors that may be relevant. <u>Halloran</u>, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)); <u>Fox v. Astrue</u>, No. 6:05 Civ. 1599, 2008 WL 828078, at *8 (N.D.N.Y. March 26, 2008).

In reaching his conclusion, ALJ Katz declined to give

controlling weight to Dr. Jacobs' pre-hearing functional assessment of the plaintiff, and gave several legitimate reasons for not "totally accept[ing]" this opinion.  (R. at 17).  First, the ALJ found that Dr. Jacobs had "not developed a substantial longitudinal treatment history" with Mr. Iannolo to be considered a treating physician at the time he completed the December 2009 assessment, "in that he actually treated [Mr. Iannolo] for approximately a four-month period" ending in June 2008.  (R. at 17).  Furthermore, the ALJ found that Dr. Jacobs' assessment was "highly conclusory," "not based on any specific clinical findings," "presented in a 'check off' format with little narrative," and "otherwise inconsistent with the overall medical record -- which showed little if any actual medical treatment since June 2008 (at which time the claimant reported doing very well)."  (R. at 17, 13).  Given the seventeen-month gap in treatment by Dr. Jacobs and the limited scope of his pre-hearing examination of Mr. Iannolo, it was reasonable for ALJ Katz to weigh the opinion accordingly.  The ALJ did point out, however, that the evaluation was nevertheless "consistent with an ability to generally perform 'sedentary' types of work tasks."  (R. at 13).

     In sum, substantial evidence in the record supported the ALJ's determination that Mr. Iannolo had the residual functional capacity to perform sedentary work.  Accordingly, deference is owed to the

Commissioner's judgment.  <u>Alston</u>, 904 F.2d at 126.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the plaintiff's motion (Docket no. 12) be denied, the defendant's motion (Docket no. 16) be granted, and judgment be entered in favor of the defendant.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable J. Paul Oetken, Room 620, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 11, 2012

Copies mailed this date:

Harold Skovronsky, Esq.
1810 Avenue N
Brooklyn, New York 11230

25

John E. Gura, Jr., Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York  10007